**NATIONAL BISCUIT COMPANY, Petitioner,**

**v.**

**FEDERAL TRADE COMMISSION, Respondent.**

**No. 25231.**

United States Court of Appeals
Fifth Circuit.

Aug. 19, 1968.

Henry B. Troutman, Jr., Atlanta, Ga., Peter B. Archie, J. Randolph Wilson, Washington, D. C., Troutman, Sams, Schroder & Lockerman, Atlanta, Ga., for petitioner.

J. B. Truly, Asst. Gen. Counsel, Fed. Trade Comm., Thomas F. Howder, Atty., Fed. Trade Comm., Washington, D. C., James McI. Henderson, Gen. Counsel, Gerald J. Thain, Henry M. Banta, Jr., Attys., for the Federal Trade Commission.

Before WISDOM and COLEMAN, Circuit Judges, and RUBIN, District Judge.

WISDOM, Circuit Judge:

The National Biscuit Company (Nabisco) brings this petition to review and set aside a 1954 modification order of the Federal Trade Commission, the FTC having commenced enforcement proceedings under that order in 1967. The Commission asks for affirmance of the order and that enforcement proceedings be allowed to proceed.[1]

The threshold issue, acknowledged by both parties, concerns the Commission's cease and desist order entered against Nabisco in 1944 following negotiations between representatives of both parties. Nabisco argues that this order resulted from a consent settlement. The Commission denies this. The other legal issues presented by the petition have, as a starting point, the assumption that the 1944 order *is* or *is not* a consent order. Yet the facts necessary for resolution of this threshold issue have never been developed in a hearing before the Commission. They should be. We therefore remand this proceeding to the Federal Trade Commission to permit both parties to adduce evidence concerning the facts which brought about the 1944 cease and desist order. The Commission has never ruled on whether the original order was a consent order, despite Nabisco's specific requests in 1954 and again in 1967 that it do so. Nabisco is entitled to its day in court, but first in an FTC hearing—not merely through briefs and oral argument in the Court of Appeals.

* * * * * *

July 20, 1943, the FTC issued its complaint charging that Nabisco had discriminated in price by selling packaged bakery food products of like grade and quality to some of its customers at higher prices than it sold to other customers competing in the resale of the products, in violation of section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act (15 U.S.C. § 13(a)). Specifically, the complaint challenged Nabis-

1. On January 24, 1968, we granted Nabisco's motion for a temporary stay of the enforcement proceedings pending our review of its petition.

co's use of its quantity discount schedule consisting of two series of graduated discounts, geared to total monthly purchases of a customer and to average monthly purchases per store. September 25, 1943, Nabisco filed its answer denying the charges and asserting that its price differentials were cost-justified under the section 2(a) proviso and were were made in good faith under section 2(b) to meet equally low prices arising from the use of the same or similar systems of discounts offered by competitors.

During the fall of 1943, the parties held settlement discussions. Nabisco's General Counsel, Sales Vice President, and Comptroller on one side, the Commission's Trial Attorney and Chief Accountant on the other side participated in these. Eventually the participants agreed on a settlement. An arrangement was prepared, consisting of (1) a specific form of á cease and desist order, (2) a stipulation as to the facts, and (3) a revised discount schedule. Although the stipulation contained no suggestion that it was contingent on the adoption of the order agreed upon, Nabisco has constantly asserted that it signed the stipulation solely to implement the particular agreed-upon consent settlement arrangement.

February 23, 1944, the Commission issued its findings of facts and an order, both of which conformed with the agreed settlement arrangement. The third paragraph of the order provided that Nabisco was prohibited

> From otherwise discriminating in price between purchasers of bakery packaged food products of like grade and quality, in any manner or degree substantially similar to the manner and degree of the discriminations referred to in paragraph four of the aforesaid findings as to the facts; or in any other manner resulting in price discriminations substantially equal in amount to the aforesaid discriminations except as permitted by Section 2 of the Clayton Act as amended.

Within three weeks of the issuance of the order, Nabisco filed a compliance report, assuring the Commission that the settlement discount schedule had been made operational. The Commission received and filed this report. This ended the matter for over four years.

In 1948, the Commission questioned whether Nabisco's discount schedule could be cost-justified. A divergence of views then arose over the extent to which the question of competitive injury could be taken into account in assessing whether the disputed price differentials violated the FTC order. The Commission apparently felt, however, that its positions could not be sustained under the 1944 order as issued. As specified in the Commission's brief,

> A close examination of the 1944 order revealed structural defects which could well preclude effective judicial resolution of the issues. Paragraph 3 of the order contained two ambiguities: (1) the phrase "except as permitted by Section 2 of the Clayton Act as amended" raised doubts as to whether Nabisco was being permitted to interpose statutory defenses in an order-enforcement proceeding regarding matters already "litigated" or waived in connection with the original disposition of the complaint * * *; and (2) the language "in any manner or degree substantially similar to the manner and degree of the discriminations referred to in paragraph four of the aforesaid findings" raised practical questions of proof in an enforcement proceeding as to whether a subsequent violation was "substantially similar" in "manner or degree" to the original violation.

Nabisco suggested that the Commission hold a hearing to determine whether the original 1944 order precluded price differentials having no adverse competitive effect. Instead, the Commission filed a motion to "Reopen and Modify" the cease and desist order, to make the 1944 order "clearer and more enforceable".

Nabisco answered the motion to reopen, contending that the 1944 order was a "consent order." Nabisco asserted that the Commission cannot and should not rewrite the order "without factual inquiry" into the terms of the consent order. The FTC replied, arguing that Nabisco *waived and bargained away in 1944, forever and now, any right which it might have had under law to object to (or even comment on) the form, contents or wording of the order to be entered (or later modified)* so long as the Commission stayed within the confines of its statutory legal and administrative discretion. (Original emphasis).

September 15, 1952, over eight years after entry of the first order, the Commission heard limited oral argument on the motion to reopen. On April 26, 1954, the Commission reopened the proceeding and issued an order modifying paragraph three of the 1944 order to read:

> From otherwise discriminating in price between purchasers of bakery packaged food products of like grade and quality where said purchasers in fact compete in the sale and distribution of such products.

The Commission's opinion did not mention the consent-settlement issue.

Although the modified order might have been appealed to a court of appeals, Nabisco did not immediately do so, evidently acting on the Commission's assurance that the modification would not deprive Nabisco of any substantive rights. This, in fact, appeared to be the case, for Nabisco submitted a Compliance report on July 6, 1954, setting forth a premodification-order discount schedule to which the Commission did not object. Nabisco made numerous supplemental compliance reports showing the continued use of the discount schedule put into effect before the modified order.

April 10, 1964, ten years after modification of the original order, the FTC directed Nabisco and its principal competitors to file current compliance reports. The Commission, dissatisfied with the information in its reports, ordered that investigational hearings be conducted to determine whether Nabisco had violated the modified order. Nabisco countered with a request that the Commission advise Nabisco of any deficiencies in its price structure and assist in Nabisco's good-faith effort to achieve voluntary compliance. June 26, 1967, the Commission rejected Nabisco's request. When informed that the compliance proceedings would be concerned solely with paragraph three of the order, Nabisco filed a motion urging the Commission to reinstate paragraph three of the original 1944 order and requested the Commission to direct "the holding of evidentiary hearings if needed to resolve any factual issues concerning the original consent settlement." August 31, 1967, the Commission denied Nabisco's motion. September 20, 1967, Nabisco filed in this Court its petition to review and set aside the Commission's orders. This Court, on January 24 of this year, granted a stay of Commission proceedings.

The first issue posed by Nabisco's petition is whether the 1944 order was a consent settlement. We have before us 700 pages of record and over 150 pages of mimeographed memoranda and petitions and printed briefs. Yet this "record" does not reflect any findings by the Commission, since the Commission has never held hearings in this case. Nabisco's evidence supporting its allegation that the 1944 order was a consent order consists of an affidavit by Nabisco's counsel who participated in the 1944 proceedings; a letter from the Commission's counsel who participated in those proceedings; secondary sources and a statement by FTC counsel in 1954 that the Commission entered into consent arrangements, despite the absence of a specific rule so providing during 1944; a 1951 Annual Report of the Commission recognizing the practice of informal consent settlements; and three cases suggesting an informal consent practice in 1944. The Commission sup-

ports its position, to the contrary, with the 1944 Rules of Practice, containing no consent procedures; reference to documents in the Commission's nonpublic files; various contemporaneous interoffice memoranda within the Commission; a specially prepared appendicized statement of the origin and development of consent settlement procedure in FTC practice; a statement of a Commission attorney given in oral argument in 1952; and a 1940 monograph on FTC procedure. We are asked, *in the first instance,* to reconstruct the facts from documents in the record and arguments in the briefs and to weigh them in light of the extrajudicial sources amassed by both parties. In effect, we are asked to resolve the consent settlement issue as would a trial judge or hearing examiner, but without using sworn statements or live witnesses or allowing further discovery. We find this role we are asked to play particularly inappropriate in a case of such complexity involving issues with which the Commission has a particular competency.

Additional issues involve the propriety of the Commission's actions measured by the criteria governing the modification of orders under Section 11 of the Clayton Act, prior to its amendment in 1959, and the propriety of the Commission's orders related to the present enforcement proceedings as measured by the Commission's rules of practice and the Administrative Procedure Act. Finally, the peripheral but substantively basic issue concerning cost justification and competitive effects of Nabisco's discount schedule remains unanswered. None of these issues has been the subject of Commission hearings.

The statute under which the petition in this case was filed provides specifically that the court of appeals may remand the case for further hearings. 15 U.S.C. § 13 (1964). Here it is not a question of *further* hearings—merely a hearing. We remand this case to the Commission for such hearings as may be indicated by this opinion, and continue the stay of enforcement proceedings pending the exhaustion of procedures within the Commission.